## IKIE HART v. STATE.

No. 24133. December 22, 1948.

Hon. R. H. Lee, Judge Presiding.

*Justice, Moore & Justice,* of Athens, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding, Judge.

Appellant was charged with possessing whiskey for the purpose of sale in a dry area in Henderson County.

A jury was waived, and the case tried before the court, and resulted in a conviction with assessed punishment of a fine of $250.00.

Upon the trial it was admitted that Henderson County was a dry area.

The case is submitted here upon the sole proposition that the evidence is insufficient to support the court's finding that appellant possessed whiskey for the purpose of sale.

Under authority of a search warrant officers searched appellant's house and premises. They found four half-pint bottles of whiskey between the mattresses on the bed in appellant's house and two empty half-pint whiskey cartons. The amount of whiskey recovered by the officers was not sufficient to raise the prima facie presumption that the liquor was possessed for the

purpose of sale. It is appellant's contention that the other evidence before the court falls short of supporting the judgment.

Appellant did not testify, and offered no evidence in his behalf.

Because of the sole question before us, it is thought desirable to set out the following testimony of Mr. McGee, the constable who, with another officer, conducted the search.

"* * * I found four bottles of whiskey and some empty cases. The cases were just square boxes with little partitions in it, where the whiskey sets down in the partition. The empty case looked to be fairly new. * * * the day before the search taken place, I parked off a little way from this place, to watch it, so I could see for sure what he was doing. I could see cars drive up there, stay a minute or two and drive off. And, so, the next morning, the morning before I went that afternoon, I borrowed another car, so they wouldn't know my car, and drove over at the store, across the highway, and parked off there, where I would be close and could see a little more of what he was doing that way. When any one would come up, I could see pretty well what he was doing—And when he would see a car drive up he would go out to the car and then go back in the house and come back to the car, and after he came back he would have something in his coat and he would get right up to the car and hand it to them. I would say that I watched Ikie Hart's place that morning for an hour and a half. I saw four cars and two cabs drive up there to this place during the time I watched his place. The time before that I imagine I was out there watching his place for twenty or forty minutes, or maybe an hour. The other time I was watching it, I was a little too far off to tell what was going on. There were three vehicles drove up there that time while I was watching. We found these bottles between the mattresses on the beds. * * * Yes, Ikie Hart runs a garage out there. No, I do not know how many people drive up there for work on their automobiles. The ones I am talking about didn't stop at the garage. They stopped at the front of the house. I do not know who they were that drove up to Ikie Hart's house that morning and stopped. Yes, I was close enough to see that he had something under his coat. Well, I know two cabs drove up there that morning. I don't think I have to tell whose they were. * * * They were the City cabs, both of them. I never noticed how many were in the cabs, but some one was in the back of one of them, he opened the back door of one of them. No, I couldn't tell exactly what he had under his coat. That is, what Ikie had

under his coat, but I could see it was something. * * * the day before when I stood over there and watched him for forty minutes or an hour, and saw three people drive up, I was not close enough then to see whether he had something under his coat or not. No, I was not close enough to tell for sure whether it was him, but it looked like him. I was pretty sure it was. It looked like him, like I would see you. I am saying that it looked like him. * * * I said I couldn't tell that far whether he had something under his coat, or not, I could just see him going out to the cars. * * * a little bottle under his jacket wouldn't make much impression, but he wouldn't stand in the open and pull that out of his pocket. It was in the daylight, and he would open the door and reach under his coat. * * *"

In an opinion of date October 27, 1948, we held that we felt unauthorized to say that the trial court might not properly have concluded that it was appellant's method of disposing of whiskey, and that appellant would not likely have resorted to such tactics unless the delivery was incident to a sale.

In a motion for rehearing appellant insists that to hold the evidence sufficient it would be necessary to utilize a presumption upon a presumption, in that the court would have to assume that the parties who went to appellant's house in the cars and taxicabs went there to purchase whiskey, and so informed appellant when he first went out to the cars, and would then have to add the further presumption that when appellant went back to the cars he had bottles of whiskey under his coat which he was selling and delivering to the occupants of the cars. This was appellant's contention upon original submission, but the cases to which we were cited appeared subject to distinguishment. In his motion for rehearing our attention is directed to the cases of Murry v. State, 148 Tex. Cr. R. 21, 184 S. W. (2d) 476, and Gunn v. State, 122 Tex. Cr. R. 422, 56 S. W. (2d) 189. An examination of these authorities convinces us that we were in error in the conclusion announced in our original opinion herein. That appellant's conduct was highly suspicious there can be no question, but the facts must rise higher than creating a strong suspicion of guilt, and presumptions upon presumptions can not take the place of evidentiary facts.

The officers are to be commended for securing a search warrant before searching appellant's private residence, and not proceeding to search without having done so and thereby necessi-

tate a reversal of a judgment of conviction, or prevent a conviction in the first instance.

What effort, if any, was made to learn the identity of the persons who were in the cars and taxicabs, of course, does not appear from the record. The feelings of those who may deal with one engaged in illegal liquor transactions should not stand in the way of developing necessary facts to ascertain the truth.

Appellant's motion for rehearing is granted, the original opinion is withdrawn, and the present opinion substituted therefor, and the judgment of the trial court is now reversed and cause remanded.